1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10                            **EASTERN DIVISION**

11

12   DIANE GIBBS,                          )       No. ED CV 13-2050-PLA
                                           )
13                    Plaintiff,           )
                                           )
14           v.                            )       **MEMORANDUM OPINION AND ORDER**
                                           )
15   CAROLYN W. COLVIN,                    )
     ACTING COMMISSIONER OF SOCIAL         )
16   SECURITY ADMINISTRATION,              )
                                           )
17                    Defendant.           )
     _____)

18

19                                    **I.**

20                             **PROCEEDINGS**

21           Plaintiff filed this action on November 15, 2013, seeking review of the Commissioner's

22   denial of her applications for Disability Insurance Benefits and Supplemental Security Income

23   payments.  The parties filed Consents to proceed before the undersigned Magistrate Judge on

24   November 26, 2013, and December 9, 2013.  Pursuant to the Court's Order, the parties filed a

25   Joint Stipulation ("JS") on August 7, 2014, that addresses their positions concerning the disputed

26   issues in the case.  The Court has taken the Joint Stipulation under submission without oral

27   argument.

28

## II.

## **BACKGROUND**

Plaintiff was born on December 19, 1960.  [Administrative Record ("AR") at 20, 131, 137.] She has at least a high school education and no past relevant work experience.  [AR at 21, 41, 45-46.]

On September 21, 2010, plaintiff protectively filed an application for Supplemental Security Income payments, and on November 4, 2010, she filed an application for Disability Insurance Benefits.  [AR at 9, 131-36, 137-38.]  In both applications, plaintiff alleged disability beginning on December 31, 1986.  [Id.]  After her applications were denied initially and upon reconsideration, plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ").  [AR at 9, 66-83, 85-86.]  A hearing was held on December 20, 2011, at which time plaintiff appeared with counsel and testified on her own behalf.  [AR at 9, 27-48.]  A vocational expert ("VE") also testified.  [AR at 9, 44-47.]  On December 29, 2011, the ALJ issued a decision concluding that plaintiff was not under a disability from December 31, 1986, through the date of the decision ("2011 Decision").  [AR at 9-22.]  Plaintiff requested review of the ALJ's decision by the Appeals Council.  [AR at 5.] When the Appeals Council denied plaintiff's request for review on February 22, 2012, the ALJ's decision became the final decision of the Commissioner.  [AR at 1-3]; see Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam).

On April 19, 2012, plaintiff filed a complaint in this Court in Case Number ED CV 12-588-PLA.  On January 9, 2013, this Court reversed the 2011 Decision of the Commissioner and remanded the case for further administrative proceedings ("2013 Order").  [AR at 672-84.]  On March 29, 2013, in accordance with the Court's Order, the Appeals Council vacated the Commissioner's final decision and forwarded the claim file for further proceedings.  [AR at 692-94.]

On June 26, 2013, a hearing was held before a different ALJ, at which plaintiff, a medical expert, and a vocational expert testified.  [AR at 586-99, 605-36.]  On August 29, 2013, the ALJ issued an unfavorable decision ("2013 Decision").  [AR at 586-99.]  This action followed.

### III.

### **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010).

"Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (internal quotation marks and citation omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (internal quotation marks and citation omitted).  "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (internal quotation marks and citation omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.").

### IV.

### **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

## A.    THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996.  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., pt. 404, subpt. P, app. 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie case of disability is established.  The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy.  The determination of this issue comprises the fifth and final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.      THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date, December 31, 1986.[1] [AR at 588.]  At step two, the ALJ concluded that plaintiff has the severe impairments of cardiac dysrhythmias, asthma, affective mood disorder, and history of methamphetamine and marijuana abuse.  [Id.]  At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listings.[2]  [AR at 589.]  The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform light work with the following limitations:

> cannot work on unprotected heights nor can she work around dangerous machinery.  She will require a clean air environment with no temperature extremes.  She can occasionally climb stairs and ramps and can occasionally stoop and bend.  She is limited to simple, repetitive tasks with no intense sustained interaction with the public, coworkers, or supervisors, however, incidental or social contact is not precluded.

[AR at 591.]  At step four, the ALJ concluded that plaintiff has no past relevant work.  [AR at 597.] At step five, based on plaintiff's RFC, vocational factors and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff could perform, including work as an inspector, assembler, and packager.  [AR at 598.]  Accordingly, the ALJ determined that plaintiff was not disabled at any time from December 31, 1986, through the date of the decision.  [AR at 587, 599.]

---

[1]    The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through March 31, 1991.  [AR at 588.]

[2]    See 20 C.F.R. pt. 404, subpt. P, app. 1.

[3]    RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity."  Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

**V.**

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ:  (1) failed to properly follow the remand instructions, and (2) failed to properly consider the testimony of the medical expert, David M. Glassmire, PhD.  [JS at 3-11, 12-16.]  As explained below, the Court agrees with plaintiff, and remands for payment of benefits.

**A.**  **THE ALJ FAILED TO PROPERLY CONSIDER DR. PAYNE'S OPINIONS ON REMAND**

Plaintiff contends that the ALJ failed to properly follow the remand instructions of this Court. [JS at 3-11.]  Specifically, she contends that on remand, the ALJ failed to follow this Court's instruction to "properly consider the opinions" of plaintiff's treating psychiatrist, Dr. Dennis Payne, who completed a Medical Opinion Re: Ability to do Work-Related Activities (Mental) form on October 27, 2011.  [JS at 3.]

In Dr. Payne's October 27, 2011, report, he opined that with regard to unskilled work, plaintiff "cannot satisfactorily perform [the following activities] independently, appropriately, effectively and on a sustained basis in a regular work setting":  remember work-like procedures; understand and remember very short and simple instructions; carry out very short and simple instructions; maintain regular attendance and be punctual within customary, usually strict tolerances; and perform at a consistent pace without an unreasonable number and length of rest periods.  [AR at 542-43.]  Dr. Payne also indicated that plaintiff has a substantial loss of ability to: sustain an ordinary routine without special supervision; make simple work-related decisions; and complete a normal workday and workweek without interruptions from psychologically based symptoms.  [Id.]  He opined that plaintiff's impairments or treatment would cause her to be absent from work more than four days per month.  [AR at 543.]

**1.**  **The 2011 Decision**

In its 2013 Order, the Court found that the reasons given by the ALJ in the 2011 Decision for rejecting Dr. Payne's opinion were not specific and legitimate, and remanded the matter for

1  further consideration of Dr. Payne's opinions.  [AR at 684.]  The reasons given by the ALJ in the

2  2011 Decision for rejecting Dr. Payne's opinions were:  (1) Dr. Payne relied "quite heavily" on

3  plaintiff's subjective symptoms and seemed to accept as true most, if not all of what plaintiff

4  reported, which the ALJ found less than fully credible [AR at 680 (citation omitted)]; (2) the course

5  of treatment pursued by Dr. Payne has not been consistent with what would be expected if plaintiff

6  were truly disabled as the doctor had reported [AR at 681 (citation omitted)]; and (3) because Dr.

7  Payne's opinion "departs substantially from the evidence of record," there was a possibility that

8  Dr. Payne expressed his opinions in an effort to assist plaintiff out of sympathy, although "it is

9  difficult to confirm the presence of such motives." [AR at 682 (citation omitted)].

10

11        **2.        The 2013 Decision**

12        In the 2013 Decision, the ALJ stated the following with respect to Dr. Payne's October 27,

13  2011, report and opinions:

14        I have considered the October 27, 2011 mental status questionnaire
     completed by Dr. Payne.  I have also given little weight to Dr. Payne's opinion for
15     many reasons.  First, Dr. Payne's notes do not support his statement.  As noted
     above, Dr. Payne gave only one mental status examination the entire time he
16     treated the claimant.  The mental status examination done on June 8, 2010,
     revealed findings within normal limits other than the claimant's own subjective
17     complaints of depression.  He assessed the claimant with bipolar disorder at the
     time.  At that time, the claimant had not yet had any treatment with Dr. Payne.  This
18     was his first evaluation of the claimant.  The records since then have detailed only
     subjective complaints.  For instance, on August 10, 2010 the claimant reported her
19     mood was worse since using Tegretol.[4]  She reported she was still seeing things
     and hearing things and her medication was not helpful for insomnia.  Dr. Payne
20     changed the claimant's medications at the time.  On August 23, 2010, he reported
     the claimant was on Lithium and Trialaton and her mood was more stable with no
21     more auditory hallucinations and her medications were more effective.    On
     September 21, 2010, the claimant reported she had muscular jerks at night and
22     feels tremulous.  She was also waking up at night.  Her medications were changed
     again.  On November 8, 2010, Dr. Payne reported the claimant still feels down and
23     cries at times but had no side effects from medication.  Dr. Payne made a
     medication adjustment.  On December 20, 2010, the doctor reported the claimant
24     had made medication changes and had more problems with her attitude but
     reported no side effects.  Another medication adjustment was made.  Dr. Payne's
25     records continue this way with frequent medication adjustments depending on what

26

27  _____

28        4        This misstates the record.  Dr. Payne's note states that plaintiff reported that her mood has
   been worsening "since she *got off* Tegretol."  [AR at 464.]

1    was reported by the claimant.  Notably, although Dr. Payne noted the claimant's
     moods, rarely was there any mention of any concentration problems.
2             I do note that the doctor has treated the claimant on a fairly consistent basis
     from June 2010 to the date of the mental status questionnaire of October 27, 2011,
3    and as such, the doctor should have obtained a longitudinal picture of the claimant's
     medical condition.  However, I am still unable to afford much weight to the doctor's
4    opinion as the opinion expressed is quite conclusory, providing very little explanation
     of the evidence relied on in forming that opinion.  Dr. Payne did not document
5    positive objective clinical findings to support the functional assessment.  The doctor
     noted the claimant was unable to manage her depressive symptoms, had multiple
6    medication changes and poor concentration, but this statement is not entirely
     supported by the doctor[']s own treatment notes.  The course of treatment pursued
7    by the doctor has not been consistent with what one would expect if the claimant
     were truly disabled, as the doctor has reported.  The doctor's treatment has been
8    primarily medication changes.  There is no indication of therapies that are more
     frequent, individual or group therapies or hospitalizations.
9

10   [AR at 596 (citations omitted).]

11        Plaintiff contends that the reasons given in the 2013 Decision for dismissing Dr. Payne's

12   medical opinion "closely parallel those previously set forth" in the 2011 Decision, and are no more

13   specific and legitimate now than they were in that decision.  [JS at 6, 7.]  The Commissioner

14   argues (1) that Dr. Payne conducted only a single mental status examination, and the findings

15   were within normal limits apart from subjective complaints of depression; and (2) that Dr. Payne's

16   treatment notes detail only further subjective complaints and medication adjustments in response

17   to those complaints and, therefore,"it was clear that Dr. Payne, in his checkbox opinion of such

18   inability [to meet competitive standards], was crediting Plaintiff's symptom complaints -- but such

19   complaints were not entirely credible, as the ALJ properly found," and which plaintiff does not

20   challenge  [JS at 11.]

21        After comparing the 2011 and 2013 Decisions, the Court agrees with plaintiff that the ALJ

22   did little more than repackage the original findings, and still fails to provide specific and legitimate

23   reasons for rejecting Dr. Payne's opinions.

24

25        **a.    Reliance on Plaintiff's Subjective Complaints with No Objective Support
             in Notes**
26

27        In the 2011 Decision, one of the reasons the ALJ gave for rejecting Dr. Payne's opinion was

28   that Dr. Payne relied quite heavily on plaintiff's subjective symptoms and seemed to accept as true

most, if not all, of what plaintiff reported. [AR at 680 (citation omitted).]  The Court found this was not a specific and legitimate reason to reject Dr. Payne's opinions as Dr. Payne had not only relied on plaintiff's subjective complaints, but on his June 8, 2010, mental status examination of plaintiff, his personal observations of plaintiff on a monthly or more basis over a period of 14 months, and his regular monitoring of plaintiff's medication regimen. [Id.]  Moreover, there was nothing in the record to suggest that Dr. Payne did not believe plaintiff's description of her symptoms or that he "relied on those descriptions more heavily than his own clinical observations in reaching the conclusion that [plaintiff is] incapable of maintaining a regular work schedule." [AR at 681.]

In his 2013 Decision, the ALJ again states that Dr. Payne's opinions are not supported by his treatment notes and reflect only plaintiff's subjective complaints. [AR at 596 (citations omitted).]  Again, under the facts of this case, based on the substantial evidence of record and for the same reasons previously stated by the Court, this is not a specific and legitimate reason for rejecting Dr. Payne's opinions.

In the 2013 Decision the ALJ expanded on this reasoning slightly to state that there had only been one initial mental status examination pursuant to which Dr. Payne diagnosed plaintiff with bipolar disorder and, other than plaintiff's complaints of depression, that examination revealed findings "within normal limits." [Id.]  The ALJ noted that even after that mental status examination, the treatment record reflected only plaintiff's subjective complaints and Dr. Payne's medication adjustments in reaction to those complaints. [Id.]  The ALJ stated that Dr. Payne's findings were "conclusory," as he provided "very little explanation of the evidence relied on" in forming his opinion, and did not document objective clinical findings to support his assessment. [Id.]

A review of the record does not support the ALJ's reasoning.  Dr. Payne's mental status examination shows that approximately one month prior to the assessment, plaintiff had been admitted to Arrowhead Regional Medical Center because she had been experiencing increasing suicidal ideation. [AR at 468.]  Moreover, after she was released, she had gone to a crisis walk-in clinic ("CWIC") approximately ten days before she started treating with Dr. Payne. [Id.]  Even after treating with Dr. Payne for some time, plaintiff sought additional help as reflected in an October 4, 2011, treatment note that indicates her husband took her to Arrowhead Regional Medical

1  Center when she stopped taking her Zyprexa for three days; they suggested she go to CWIC,

2  which she did.  [Id. at 570.]  When Dr. Payne next saw plaintiff, he adjusted a number of her

3  medications.  [Id.]  Indeed, as the ALJ noted, Dr. Payne frequently adjusted plaintiff's medications

4  in response to her symptoms; presumably, Dr. Payne believed that plaintiff suffered some

5  impairment caused by her depression and bipolar disorder or he would not have prescribed and

6  adjusted her medications in response to her complaints.  Indeed, Dr. Payne's treatment notes

7  regularly reflect that plaintiff's medications rarely controlled all her symptoms, frequently caused

8  unwanted side effects, and that her symptoms fluctuated.  [See also Discussion infra Part V.B.]

9       Accordingly, the ALJ failed to provide specific and legitimate reasons for rejecting Dr.

10  Payne's opinions.

11

12              b.     Plaintiff's Course of Treatment

13       In the 2011 Decision, the ALJ stated that the course of treatment pursued by Dr. Payne has

14  not been consistent with what would be expected if plaintiff were truly disabled as the doctor had

15  reported.  [AR at 19].  In its 2013 Order, the Court noted that Dr. Payne saw plaintiff on numerous

16  visits from June 2010 to December 2010, and from April 2011 to November 2011 -- often more

17  than once a month.  [AR at 681 (citations omitted).]  He prescribed psychotropic medications, and

18  made changes to her medication regimen on numerous occasions in order to increase the efficacy

19  of her treatment.  [Id. (citations omitted).]  The Court found that the ALJ erred because he did not

20  state specifically how the care plaintiff received from Dr. Payne was conservative, and he "pointed

21  to nothing in the record to show that any specific treatment in addition to the treatment plaintiff was

22  receiving is a standard method of treating her bipolar disorder."  [Id. (citations omitted).]

23       In the 2013 Decision, the ALJ again states that Dr. Payne's course of treatment was not

24  consistent with what would be expected of disability.  [AR at 596.]  Again, the ALJ failed to state

25  how the treatment rendered by Dr. Payne was conservative.  As noted above, this Court has

26  already found that this statement was not a legally sufficient reason for discounting Dr. Payne's

27  opinion.  [AR at 681.]

28

Moreover, the ALJ's additional statements in the 2013 Decision to the effect that Dr. Payne's treatment consisted primarily of medication changes, and that there is no indication of any "therapies that are more frequent, individual or group therapy or hospitalizations," do not serve to render the ALJ's reasoning any more specific or legitimate.  As previously discussed, Dr. Payne's regular adjustments to plaintiff's medications reflected an attempt to improve plaintiff's response to treatment and tend to support Dr. Payne's opinions.  The ALJ still fails to show that "more frequent" unspecified therapies, or individual or group therapy would be standard for treating plaintiff's bipolar disorder.  And, contrary to the ALJ's statement, there are indications in the record that plaintiff had been hospitalized on at least one occasion [AR at 468, 470, 545-62], and had sought crisis care on at least one other occasion.  [AR at 570.]

Accordingly, these are not legally sufficient reasons for rejecting Dr. Payne's opinions.

### 3.    Conclusion

The ALJ again failed to provide legally sufficient reasons for rejecting Dr. Payne's opinions, and remand is warranted.

## B.    The ALJ Failed to Properly Consider the Medical Expert's Testimony

At the hearing, medical expert David Glassmire, PhD, a Board certified clinical psychologist in forensic psychology, testified that in his opinion, as of May 19, 2010, plaintiff met the requirements for Listing 12.04, affective disorders, with some psychotic symptoms associated with her bipolar disorder.  [AR at 612, 617-18.]  When asked for the basis of his opinion, Dr. Glassmire identified myriad records, reciting in detail the various psychotic and other symptoms reflected by each of those records, the ineffectiveness of plaintiff's medications, medication side effects, fluctuating mood symptoms, "a number of notations indicating significant symptoms," the appearance of sometimes psychotic symptoms, and GAF scores at various times of 25, 49 and

60[5] [see, e.g., AR at 476, 504, 558]. [AR at 612-16, 619.] The ALJ asked Dr. Glassmire how he was able to distinguish plaintiff's mental status "when most of the notes are self reported symptoms, versus the analysis that the doctor gives when he gives a mental status test," especially in light of the fact that Dr. Payne only performed one mental status examination. [AR at 617-18.] Although he acknowledged that "[t]here's no way to prove for sure" the veracity of the self-reported complaints, Dr. Glassmire indicated that he believed plaintiff's self-reported symptoms were "relatively consistent" over the time period he indicated, and her doctor "seem[ed] to feel that the symptoms were legitimate." [AR at 618.] He also noted that the ongoing treatment records were generally consistent with each other and with Dr. Payne's opinion.  [Id.]

The ALJ dismissed Dr. Glassmire's opinion as follows:

> At the hearing, Dr. Glassmire opined that the claimant met listing 12.04 based primarily on [Dr. Payne's October 27, 2011, opinion].  He reported the claimant had records, which documented self-reported complaints of persistent symptomatology including poor motivation, irritability,  . . . auditory hallucinations, and fatigue.  However, he also noted that interspersed with these records were records noting that the claimant was doing well with stable mood.  Despite this statement, Dr. Glassmire then contradicted himself by testifying that the claimant's symptoms appeared consistent.  He reported further that Dr. Payne's notes reflected the claimant's reported symptoms and that it was unusual for the claimant to have only one mental status examination.  Given these inconsistencies as well as the fact that Dr. Glassmire relied on Dr. Payne's reports, which the doctor admitted reflected the claimant's own self-reported symptoms (as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints), I have given less weight to Dr. Glassmire's opinion.  . . .

---

[5]   A Global Assessment of Functioning ("GAF") score is the clinician's judgment of the individual's overall level of functioning.  It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations.  See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), at 32 (4th ed. 2000).  A GAF score in the range of 21-30 indicates behavior is considerably influenced by delusions or hallucinations or serious impairment, in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) or inability to function in almost all areas (e.g., stays in bed all day, no job, home, or friends).  DSM-IV, at 34.  A GAF score in the range of 41-50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning (e.g., unable to keep a job). DSM-IV, at 34.  A GAF score in the range of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers).  DSM-IV, at 34.  The hearing transcript here reflects that Dr. Glassmire indicated Dr. Bagner had assessed a GAF score of 50 [AR at 613]; either Dr. Glassmire misspoke, or the court reporter misheard his testimony, as Dr. Bagner assessed a GAF score of 60, not 50. [AR at 504.]

. . . .

As noted above, I have given less weight to Dr. Glassmire. Although Dr. Glassmire had the opportunity to review the entire medical record, I am unable to give him much weight. Dr. Glassmire noted that the claimant's treatment records were primarily self-reported symptomatology and that it was unusual for a treating doctor to have only one mental status examination. Nevertheless, Dr. Glassmire proceeded to opine that the claimant met listing 12.04 given these "consistent" self-reported symptomatology. However, Dr. Glassmire then also admitted that there are periods in which the claimant also reported stable mood and no complaints. The fact that the claimant has had only intermittent subjective complaints refutes the fact that the symptomatology is consistent and persistent or unrelenting. The records in fact indicate that with treatment and medication, the claimant's symptomatology has made improvements. Dr. Glassmire relied heavily on these subjective reports, despite noting that they were self-reports and accepted these symptoms as true. However, as discussed above, there are many reasons for questioning the reliability of the claimant's subjective complaints. Furthermore, the fact that there are non-persistent symptomatology would be contrary to a finding for 12.04.

[AR at 590, 595.]

The Court finds that the ALJ's reasons for discounting Dr. Glassmire's opinions, which were based at least in part on Dr. Payne's opinions and records, were not specific or legitimate.

The ALJ misstates Dr. Glassmire's opinion when the ALJ states that the record contradicts Dr. Glassmire's opinion that plaintiff's symptoms were "consistent" because it shows periods during which plaintiff's symptoms appeared to improve. [AR at 590.] In fact, Dr. Glassmire did not state that plaintiff's symptoms were always consistent -- he generally addressed this point in his testimony by stating that the *records* "relatively consistently" indicate "significant mood symptoms," including psychosis, trouble sleeping, tearfulness, appetite fluctuations, anger problems, fatigue, lack of motivation and suicidal ideation [AR at 612-14], and also explaining that plaintiff's "symptoms wax and wane but that's generally attributed to [her] disorder." [AR at 613.] Dr. Glassmire also noted that it was his opinion that the ongoing treatment records, including the psychiatric consultative examination, "somewhat underestimated" plaintiff's functional limitations because of her "fluctuat[ing] mood symptoms and the appearance of sometimes psychotic symptoms." [Id.] Dr. Glassmire stated that plaintiff's treatment with Klonopin and Seroquel, although not the most common medications for bipolar disorder, may have been in part because

13

1  the side effects of various medications that had previously been tried "may be why she's not on

2  the more traditional medication regimen," which might include Lithium or Depacote.[6]  [AR at 619.]

3        Nor, contrary to the ALJ's statement, did Dr. Glassmire ever actually state that it is

4  "unusual" for a treating psychiatrist to administer only a single mental status examination -- he only

5  stated that "*[g]enerally* a few more mental status exams" would show.  [AR at 617-18 (emphasis

6  added).]  In fact, Dr. Glassmire seemed to imply that most such mental status examinations are

7  associated with a claimant's self report.  [See AR at 617-18.]

8        Based on the foregoing, the ALJ did not provide specific and legitimate reasons based on

9  substantial evidence of record for discounting Dr. Glassmire's testimony, including his opinion that

10  plaintiff met Listing 12.04 since May 19, 2010.

11

12  **VI.**

13  **REMAND FOR FURTHER PROCEEDINGS**

14        "The decision whether to remand a case for additional evidence, or simply to award benefits

15  is within the discretion of the court."  Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987).

16  Where substantial evidence does not support the Commissioner's decision, the Court may reverse

17  and remand for payment of benefits. Id.  "[W]here the record has been developed fully and further

18  administrative proceedings would serve no useful purpose, the district court should remand for an

19  immediate award of benefits."  Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir.2004).

20  Specifically:

21      the district court should credit evidence that was rejected during the administrative
    process and remand for an immediate award of benefits if (1) the ALJ failed to

22      provide legally sufficient reasons for rejecting the evidence; (2) there are no
    outstanding issues that must be resolved before a determination of disability can be

23      made; and (3) it is clear from the record that the ALJ would be required to find the
    claimant disabled were such evidence credited.

24

25

26  _____

27      [6]   Indeed, a review of the record shows that plaintiff had been on Lithium in 2010 [AR 477-79]
but that in October 2011 Dr. Payne determined it was "not effective" and apparently discontinued

28  its use.  [AR at 570.]

1    Id.  Where these criteria are met, "remanding for further administrative proceedings would serve

2    no useful purpose and would unnecessarily extend [plaintiff's] long wait for benefits."  Id. at 595.

3            Under the circumstances, the Court is persuaded that "remanding for further administrative

4    proceedings would serve no useful purpose and would unnecessarily extend [plaintiff's] long wait

5    for benefits."  Benecke, 379 F.3d at 595.  First, because, for the second time, the ALJ did not

6    provide specific and legitimate reasons for his rejection of plaintiff's treating psychiatrist's opinions

7    (see Discussion supra Part V.A.), the Court credits the opinions of Dr. Payne as a matter of law.

8    See Widmark v. Barnhart, 454 F.3d 1063, 1069 (9th Cir. 2006) ("Because the ALJ failed to provide

9    adequate reasons for rejecting [the examining physician]'s opinion, we credit it as a matter of

10   law."); Edlund v. Massanari, 253 F.3d 1152, 1160 (9th Cir. 2001) (crediting, as a matter of law,

11   improperly rejected treating physician opinions); see also Pitzer v. Sullivan, 908 F.2d 502, 506 (9th

12   Cir. 1990) (remanding for payment of benefits where the Commissioner did not provide adequate

13   reasons for disregarding examining physician's opinion).  For the same reasons, the Court credits

14   the opinions of Dr. Glassmire as a matter of law, including his opinion that plaintiff met the

15   requirements of Listing 12.04 as of May 19, 2010.

16           Moreover, Dr. Payne opined that plaintiff's impairments would cause her to be absent from

17   work more than four days a month.  [AR at 243.]  Thus, even without direct VE testimony relating

18   to plaintiff's limitations, it is clear that crediting Dr. Payne's opinion renders plaintiff disabled as of

19   May 19, 2010.[7]  See Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1164-65 (9th Cir.

20   2012) (reversing for an award of benefits where the record as a whole showed that the claimant

21   was likely to miss multiple days of work per month, and the VE testified that a person who would

22   miss two days of work a month was not employable); see also Watson v. Barnhart, 2003 WL

23   21838474, at *1 (N.D. Cal. Aug.1, 2003), aff'd, 126 F. App'x 788 (9th Cir. 2005) (testimony by VE

24

25         [7]    The VE in this case did testify that if plaintiff were off task 20% of the time due to
     psychological-based symptoms, there would be no work she could do.  [AR at 627.]  Although
26   these are not the precise limitations opined by Dr. Payne, as the Ninth Circuit has stated,
     "[r]equiring remand for further proceedings any time the vocational expert did not answer a
27   hypothetical question addressing the precise limitations established by improperly discredited
     testimony would contribute to waste and delay and would provide no incentive to the ALJ to fulfill
28   her obligation to develop the record."  Benecke, 379 F.3d at 595.

1   that claimant "could not work in any gainful employment if she had to miss more than three days

2   of work a month"); Wright v. Astrue, 2009 WL 2827576, at *8 (D. Or. Aug. 24, 2009) (testimony

3   by VE that plaintiff could not perform competitive employment if she had to miss more than two

4   days of work a month on a routine basis).

5      In short, because it is clear from the record that crediting the opinions of plaintiff's treating

6   psychiatrist and the medical expert would result in a finding that plaintiff is precluded from

7   engaging in substantial gainful activity since May 19, 2010, the Court sees no need to return the

8   case to the Commissioner to make yet another determination as to whether plaintiff's treating

9   psychiatrist's opinions and/or the opinions of the medical expert should be credited or rejected.

10  "Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails,

11  let's play again' system of disability benefits adjudication." Benecke, 379 F.3d at 595.  Plaintiff has

12  already waited nearly four years for a disability determination.  [See AR at 9]; see also Benecke,

13  379 F.3d at 595 ("Remanding a disability claim for further proceedings can delay much needed

14  income for claimants who are unable to work and are entitled to benefits, often subjecting them

15  to tremendous financial difficulties while awaiting the outcome of their appeals and proceedings

16  on remand.") (internal quotation marks and citation omitted). Accordingly, a remand for the

17  payment of benefits is warranted regardless of whether the ALJ might have (on remand)

18  articulated a valid justification for rejecting the opinions of plaintiff's treating psychiatrist and the

19  medical expert.

20     The Court notes, however, that plaintiff's date last insured was March 31, 1991.  [AR at

21  586.]  In order to qualify for Title II Disability Insurance Benefits, plaintiff must show disability prior

22  to the date she was last insured.  [Id.]; see also Social Security Ruling 83-10 ("Under title II, a

23  period of disability cannot begin after a worker's disability insured status has expired.")  Because

24  disability has only been demonstrated from May 19, 2010, plaintiff is ineligible for disability

25  insurance benefits.[8]

26  _____

27     [8]   The Medical Expert testified that there "were really no records commenting substantially
    on the claimant's psychological or psychiatric function" prior to May 19, 2010 [AR at 612], and

28                                                                                              (continued...)

16

1    Supplemental Security Income benefits are not payable for any months prior to the filing

2    of an application, and the earliest month for which the claimant can receive benefits is the month

3    following the month the claimant filed the application.  20 C.F.R. § 416.335.  Thus, the relevant

4    time period concerning plaintiff's disability for purposes of payments of Supplemental Security

5    Income began on September 21, 2010, the protective filing date of her application.

6

7                                          **VII.**

8                                    **CONCLUSION**

9           **IT IS HEREBY ORDERED** that: (1) plaintiff's request that the final decision of the

10   Commissioner be vacated is **granted**; (2) the decision of the Commissioner, to the extent it found

11   plaintiff ineligible for disability insurance benefits, is **affirmed**; (3) the decision of the

12   Commissioner, to the extent it found plaintiff ineligible for Supplemental Income Security, is

13   **reversed in part**; and (4) this action is **remanded** to defendant for the award of Supplemental

14   Security Income benefits based on the protective filing date of plaintiff's application, September

15   21, 2010.

16          **IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the

17   Judgment herein on all parties or their counsel.

18          **This Memorandum Opinion and Order is not intended for publication, nor is it**

19   **intended to be included in or submitted to any online service such as Westlaw or Lexis.**

20

21   DATED: September 11, 2014

22                                              PAUL L. ABRAMS
                                        UNITED STATES MAGISTRATE JUDGE

23

24

25   _____

26   [8](...continued)
     plaintiff's counsel conceded that the records only "go back about four years or so ago" and did not

27   see any basis for pursuing the Disability Insurance Benefits claim.  [AR at 611.]  The Court sees
     no evidence, and plaintiff does not argue that any evidence exists, or a disability prior to plaintiff's

28   date last insured in 1991.

                                              17